The next case for argument is 22-2034, Intel Corporation v. Philips. Good morning, your honors. May it please the court. Christine McCullough for appellant in Dell Corporation. The board erred in these cases by failing to analyze the arguments as they were presented in the petitions. The petitions argued obviousness based on two parallel independent references, the references OCPS and Menezes, in view of Branson-Chom's teaching of timing a challenge-response pair and using that timed challenge response to for Menezes, the petition argued that just by timing the existing challenge and response that the Menezes textbook already disclosed and comparing that round-trip time to a predetermined time selected to correspond to a distance, the challenge claims were obvious. For the OCPS... I got to tell you, I know you devoted a lot of your brief to this kind of APA style issue and I just find it confusing. I'm not getting it. Because the board seems to me did a fairly fulsome analysis. You put the pieces of prior art before the board and the question is whether they would have been combined in some way, shape or form. So I don't, I'm not seeing where the board really misread or did something wrong in a way that would compromise its findings and conclusions with respect to the prior art references. And you're not challenging motivation, lack of motivation, right? And you're not challenging a lot of that, right? So we are, Your Honor, challenging the board's finding on a lack of motivation to combine. That was the only finding that the board made. We do argue that that finding is not supported by substantial evidence. But if I could address Your Honor's primary question, I would say two things. First, it isn't enough for the board just to evaluate any way in which these references could be combined. This court's cases, for example, Shin Fu and Provisor specifically say, the board needs to analyze the specific arguments, the obviousness arguments set forth in the petition. Those arguments were, would it have been obvious in the petitions that it would have been obvious to simply time the existing challenge and response in Menezes and compare that to a limit? That was the obviousness argument set forth in the petition. That argument is nowhere discussed in the board's analysis. Well, is your problem that the board started looking at Braun's charm and obviously couldn't ignore the fact that it was a single bit that it described as being an essential element of the distance-bounding protocol? Is it your argument that they shouldn't have gone that far? That's what they shouldn't have looked at in Braun's charm? That's exactly right, Your Honor. In terms of analyzing the arguments as presented in the petition, the petition never identified anything related to the low-level details of the examples, the protocols that Branz and Chom walked through. There was no discussion in the petition of the single bit rapid exchange and how that might or might not be combined with Menezes. Okay, but you put the reference before the board. Correct. And one of the questions is whether there's motivation to combine. So just because the site certain portions of the prior art that it is put before the board, does that mean that the board has to ignore that and the board was only allowed to look at certain portions of Braun's charm but not the fact that it implicated only a single bit challenge? Certainly not, Your Honor, and that's not our argument. But the board did not make a finding here, for example, that Branz and Chom teaches away from measuring distance in any other context. The board did not make a finding that Branz and Chom is specifically limited, would be understood by a person of skill in the art as specifically limited to the protocols that it walks through. The board didn't make any finding like that. If it had... I'm sorry, you don't think that the central reliance by the board on this essential element or whatever the phrase is that includes essential right at the beginning of Branz and Chom amounts to saying that as soon as you read, even begin to read Branz and Chom, you see that it thinks for distance measurement, there had better be nothing but a single bit immediately responded to with a single bit. No, we do not see that finding anywhere in the board's order, Your Honor. What would the board said, and this is at appendix 11, for example, appendix 24, is that Branz and Chom required as essential element of its protocols, that single bit rapid exchange. What if we were to read the board decision, which quoted this essential element feature of the single bit challenge response protocol of Branz and Chom as finding that the problem with this proposed combination is like mixing apples and oranges, and that the Branz-Chom is really about a single bit challenge response scheme, because you need that bit signal to be outputted by the prover device immediately, and then the primary references you rely on are these much larger multi-bit exchanges, and so that was the basis for saying that it just doesn't seem to be a natural motivation to combine these two different species of bit exchanges. Well, Your Honor, if the board had made any of those findings, we would be presenting different arguments today. That is not what the board found. What if we were to read it that way, based on the multiple quotes of the essential element statement from Branz-Chom here in the board decision? So, Your Honor, I think that there is simply no analysis that the board has set forth that would allow the court to understand with certainty that that is, in fact, what the board found. Well, on 23, the board says the petitioner bears the burden the petition did not adequately address the conflict between Menendez's multi-bit disclosure and Branz-Chom's essential single bit challenge rapid response. They say essentially the same thing on page 24. In other words, Branz-Chom's multiple exchanges consist of multiple single-bit exchanges, which contrasts to Menendez's single-bit multi-bit exchange. I mean, that's what the board relied on, and I guess they were looking for the petitioner with some testimony, which I don't think was forthcoming, to say why that doesn't matter, or why, even given this distinction, someone would have still been motivated to combine the references. Yes, I would say also on appendix 21, this is the only thing that the board found. They say this a few different times in slightly different language, but this is exactly the board's finding, that it would not have been obvious to change Branz-Chom's single-bit message to have multiple bits. Again, not what the petition argued, not the argument presented in the petition, because that would have led to a less accurate distance measurement and impaired security. But ultimately, the petitioner was seeking the board to combine the two references. In a particular way, Your Honor. To combine the references in a particular way. A particular way to ignore the single-bit reference and the essential nature of that reference in Choms, that they should have just taken the other stuff in Choms and completely excised and ignored the context in which Choms was talking. The context is certainly instructive, but it is not limited. Prior art is prior art for all that it teaches, Your Honor. And that was the basis on which the combination was made. The combination did not depend on the specifics. What you just said is right, that prior art is prior art for all that it teaches. And doesn't the teaching of Branz-Chom rest on the emphasis on the single bit as an essential element? And wasn't it incumbent upon you to, at least through expert testimony, say why not or why that was easily adjustable and it wouldn't matter in terms of motivating the combination? So I would say two things, Your Honor. First, none of this, the issues on which the board's decision rested, became an issue until oral argument. Oral argument before the board. This was nowhere in the briefing, this dependence on single bit. And you notice that the board went through a number of pages, really confirming that these two references describe different protocols, which I don't believe is disputed. And really engaged in almost a bodily incorporation argument. That was never what the petition had argued. That was not the subject of any of the briefing. In our reply... I'm sorry, before you go any further, are you now making some kind of... Well, I didn't see in your blue brief an argument, some kind of APA notice and opportunity argument. No, we're not making that argument, Your Honor. So then I don't know where you're going with this argument that, well, some kind of understanding of Brand's charm was sprung on you at the oral argument before the board. The question that I was responding to, Your Honor, was wasn't it incumbent on Petitioner to satisfy our burden? The burden that we were attempting to satisfy related to the arguments that we presented in the petition. This was not an argument presented in the petition, or even one that we were aware of until oral argument. Which is why we do believe that we did satisfy our burden. And I would say two things just to finish out that thought. First, the board did not make a finding that Brand's charm was limited to the details of the protocols. And there is substantial contrary evidence in the record that would mean that that finding, if we could read the board's decision as making it, would be completely unsupported by the evidence. Well, what about A18, where the board is doing a compare and contrast between Brand's charm's essential element of a single bit challenge and response, and then moves on to Menzi's, which is doing this multi-bit process. And the conclusion... And then it leads with the problem with the proposed combination is the expressed teachings of Brand's charm require timing a rapid single bit. And would have understood that Menzi's challenge response has multiple bits. And the reason that's a problem, according to the board, doesn't become articulated until Appendix 21, where the board says the reason this is a problem is because the combination would have led to decreased accuracy, and therefore impaired security. So neither of those findings, those conclusions, are supported by the three pieces of testimony, which is all the board cites to here. That's why that difference is... Part of the rationale is that it's also just inaccurate distance calculation. And that's part of the board's concern here. Well, so two things, Your Honor. First, there is no level of accuracy that's required by these claims. That the patent doesn't discuss accuracy, or even how to calculate distance at all. So that would be reading in a requirement in the claims that is not there, and the patent doesn't even address. But the board's findings here rested on three particular pieces of testimony. And it cites these three testimonies by Dr. Karp here. That's the entirety of the evidence the board cites. And what the board cited doesn't actually support its conclusion that this would have led to a delay that would impair security. I mean, taking the second part perhaps first, there is no way that in a combination that would simply layer on an additional complementary type of security, to not layer that on doesn't hurt the existing security of the reference, right? Secure references already. So even if this additional distance measurement had only moderate accuracy, it still couldn't have hurt the security of the system. There is no sense in which that would be supported. But also these three pieces of testimony that the board cites. The first one is at appendix, you can find it at 5495. And what this piece of testimony is saying is, in Branson-Chom, the reason that he wants a immediate response, it's not even talking about the single multi-bit thing here. He says, the reason that you want a rapid response is to ensure that in any round-trip time, transmission time is maximized, it's dominant. The second piece of testimony that the board cites is at 5505. And that is where Dr. Karp said, a multi-bit signal. Dominant is different from maximized, right? You just want the processing time on the prover's end to be trivial compared to the actual movement time between sender and receiver so that the movement time will closely correlate to a distance without the complexity of adding time where no movement is going on and therefore distance is not being assessed. That's exactly right, Your Honor. I didn't mean to use the term maximized. You're exactly right. But the punchline of this is, there is no indication here that extra transmission time is bad, is leading to inaccuracy in some way. Suppose I read the transmission there to be the entire round-trip, which includes the processing time on the receiving end, which I think is a very natural reading. Right, that's exactly right, Your Honor. That would be bad to have lots and lots of processing time on the receiving end that makes the round-trip longer for reasons having nothing to do with distance. Well, it would be perhaps less accurate to some degree. It would still be accurate to some degree as well. The board specifically found there's nothing in the record that quantifies. You proposed a claim construction of the petition, I think, of predetermined time, a time interval selected to ensure, ensure that the first and second communication devices are sufficiently near one another. Isn't there at least some concept of trying to be accurate about the distance? Well, sufficiently, Your Honor, also indicates that there's an appropriate level of error that's right in here. Nothing is ever perfectly accurate, but certainly... The sufficiently doesn't apply to the sureness of the assessment, but rather to the length and the distance. That's correct, Your Honor. So there's a correlation between those two. The precision of the distance measurement will correlate to the precision of the accuracy. I noticed that I'm well into my rebuttal time, so... Let's hear from the other side and we'll restore some time. Okay. Good morning, Your Honors. May it please the Court. The Patent Trial and Appeal Board's final written decisions upholding the validity of Phillips 809 patent were correctly decided and should be affirmed. Those decisions are supported by the Board's predicate fact findings, which this Court reviews for substantial evidence, and those findings are amply supported by the record below. Well, what say you to their principal argument, or at least their lead argument on the APA, that the Board needed to adhere to the combinations and the analysis and the petition and not go farther, and that it did go farther? We respectfully disagree, Your Honor. We believe that the final written decisions and the PTAB did faithfully apply the proposed combinations as they were set forth in the petition. We see that in multiple instances in the record in the final written decisions. The Board specifically noted that the proposed combination was leaving the primary reference authentication message exchange intact in MENIZAS or OCPS and recognizing that the argument in the petition was, let's add a timing mechanism to that message exchange. And that's exactly the lens that the final written decisions assessed with respect to the combinations. So the idea that time and distance is correlated is pretty basic, right? So why is it a fair, is it not a fair reading of Braun's charm, Braun's charm, whatever it's called, to say that, okay, you could have made the adjustments. Well, whether it was multi-bit or single bit, they're teaching that adjustments could have been made to this correlation and it would have been useful in combining the references and getting to where they got. Two reasons, Your Honor. For one, as this Court is aware, Braun's charm references and teaches expressly that its essential element or required element for a distance bounding protocol is the use of rapidly exchanged single bits. And so in every instance in which Braun's charm is discussing using a distance bounding protocol, they say you must use a rapidly exchanged single bit. In addition, Your Honor, there's a specific reason for that and the Board discusses it in its final written decision. So at Appendix 22, which is the final written decision, the Board noted that even if the references were to be combined in the manner proposed in the petitions, it would result in impaired security. The Board explained further at Appendix 15 in the final written decision precisely why that is. The Board noted with approval the patent owners showing in the proceedings below that allowing processing time in this system in a way that would skew the analysis of really what we're looking at, which is supposed to be just transmission time, would give rise to the problem of a fraud reference by a fast responding prover. Well, what the Board says on the top of 822, and I don't know if this is that, it would have inflated the delay and reduce the accuracy of the distance measurement, which would have frustrated Braun's charm's goal. Now, do we need to take the goal of a prior art reference? I mean, plenty of times one of the prior art references that one is using is for a teaching in that reference, not necessarily constrained by the precise goal of that reference. So why are we stuck on what the goal was as opposed to just saying this is a teaching and they could have adjusted the correlation and it would have been applicable to something beyond a single bit. Here, Your Honor, the petition's proposed combination is that a person of ordinary skill in the art would have looked at Braun's charm and decided to use a distance bounding protocol. The problem with the argument that the petition makes is that part and parcel of Braun's charm's distance bounding protocol is the use of a rapidly exchanged single bit. And the reason is that is necessary in order to prevent this fraud that Braun's charm refers to, or that's referenced in the final written decision as the fast responding prover. So in other words, if a first device is transmitting a single bit to a second device, and the second device has to immediately respond to Judge Toronto's point, you're taking care of the problem of potentially allowing processing time to overwhelm transmission time. It's a minimal system. It's single bit. It's rapidly exchanged. You know that the elapsed time is going to be representative of a distance limit. Now, in the proposed combination, which proposed timing a many bit or multi-bit exchange in Moniz's or OCPS, the reverse is true. You now have processing delay that necessarily results. And what can happen in that scenario is the inability to enforce a distance limit. There's a fraud that Braun's charm refers to at appendix 3212. Quote, we go on to show how distance bounding can prevent frauds in which a party having access to the secret keys convinces a verifying party that he is within a certain distance when he is not. And so that's the fast responding prover. In other words, a device that would increase its processing power so that it could process multi-bits much faster than would be anticipated in, for example, a consumer device and therefore respond very quickly. The verifier device would think that, hey, that device must be closer than it really is, not recognizing the device may be much further away and just used significant processing power to be able to respond quickly. Can you, I don't remember this from the portions of the papers that are in the joint appendix from the board proceedings. Was there material in the petition and counter material in the patent donor response about the kinds of things one might have to do if one was sending a 256-bit message and measuring the return time on that kind of message as opposed to the single bit? I mean, I could imagine kinds of things you would do, but was that a subject either with respect to how it would achieve whatever is implicit in the predetermined time or reasonable expectation of success? Can you just tell me what was said in the two sides papers about those kinds of modifications? Yes, Your Honor. So in the petition and the accompanying expert declaration, there was no acknowledgement, much less seeking to explain away the brand strong essential element of a single bit and the rapid response. So there was no mention of it in the petition or the expert declaration. In patent owner's response, patent owner did point out this fundamental inconsistency, conflict in the primary references and the secondary reference brand's charm. Can you point us to the appendix site where you did that in your patent owner response, what you said about the single bit? Yes, Your Honor. Appendix 375 and so on. That's what I'm looking at. Thank you, Your Honor. There's the many versus one and then there's the single bit versus data-rich transmission. Appendix 379, Your Honor. It starts single bit transmissions versus data-rich transmission, specifically noting the brand's charm, teaching that each bit of the prover is to be sent out immediately after receiving a bit from the verifier, V. And then if we look, Your Honor, over at appendix 380, also in the patent owner response, this is the concept of the fast-responding prover I was just mentioning. And so as patent owner showed in the response, there was no accounting in the initial petition or accompanying expert declaration as to why they apparently thought it okay to disregard the single bit. And so what patent owner showed in its patent owner response is that this fast-responding prover problem arises if you were to do what the proposed combinations suggested, which is simply try to time a multi-bit message in an authentication protocol. The fast-responding prover would be able to pretend to be closer than it actually was. And so this creates the security impairment that the board referenced in its final written decision, which is that you now have a system under the false belief, false sense of security that I'm going to be able to restrict the provision of information to a device that's within a distance limit, when in fact, now that you're using multi-bit signals between the first and second devices, this second device can commit fraud, be much further away than it otherwise would be just by the use of additional processing power. It's leveraging that processing time that is now attendant to the multi-bit signal. And Your Honor, Judge Toronto, you asked a question about was there quantification in the record? And just before I move to that, I will note that even after the patent owner referenced in its patent owner response, as we just looked at, these arguments, they were ignored by the petitioner in its reply. So those arguments were not responded to in the petitioner's reply. And then it came up in the hearing. Yes, Your Honor. To answer your question, Judge Toronto, about was any of this quantified in the record? The answer is no. The board specifically noted that the petitioner, who of course bears the burden of proof as the one challenging the Phillips patent, at Appendix 23, patent owner correctly points out that there was never any attempt by petitioner or Dr. Karp, which is petitioner's expert, to address the issue of inaccuracy. And so that was not something that the petitioner acknowledged, much less addressed. But I think the board analyzed the issue correctly. Again, if we look at Note 15 at Appendix 23, the board correctly noted the issue before us is not whether the references fail to teach or suggest a certain accuracy, but whether one of ordinary skill in the art would have made the proposed combination. And so back to the initial point, Your Honor, there were findings of fact. The primary references necessarily require first and second devices that transmit multi-bit signals as part of an authentication. The secondary reference transmits, this is Branscham, as part of its essential element or required element of a distance bounding protocol, single-bit rapidly exchanged messages in order to compute a distance limit. And there was no further analysis or any analysis of that fundamental incompatibility and conflict, as the board referenced it, in the petition, the accompanying expert declaration, nor even in the reply after patent owner identified this fundamental flaw in the petitioned grounds in the patent owner response. Can I ask you a kind of housekeeping question? Yes, Your Honor. Just that you cite related cases, there are five, you cite five pending district court proceedings in the District of Delaware as related cases. Do they all involve the 809 patent that's at issue here, or do they involve other patents and other issues? At least four out of the five involve the 809 patent, yes, Your Honor. And are those stayed, or are the proceedings ongoing, or what's the nature of what's going on? The proceedings are ongoing. There is a pending motion in one of the cases. There was a Markman order last June by Judge Connolly, and there is a pending defendant's motion, which we expect to be resolved shortly. And there are no outstanding IPRs dealing with this patent? That is correct, Your Honor. How do you pronounce the name of your client? I try to ignore it. Your Honor, I believe they're listening. I hope I get this right. It's Phillips Coniclica. Coniclica. What? Say it again. Coniclica. Coniclica. Okay. Unless Your Honors have additional questions, I return my remaining time to the Court. Your Honors, I do not have... Let's restore three minutes. Thank you for your indulgence, Your Honors. I have just three or four points I would like to hit, and of course, address any questions from the Court. First, there was a question as to whether in the petition or the expert report, there was any attempt to account for the possibility of having longer signals or delays, something on those lines. There certainly was. This came up most specifically in the context of a dependent claim that recited that the predetermined time needed to be selected based on the communication system. And there, and it's Appendix 1737 to 1739, Dr. Karp said, a person of skill in the art would be able to take into account computation time associated with the cryptographic function being used, would be able to take into account the transmission time and the signal that's being transmitted over the particular medium. All of that is within the skill of the art in crafting the predetermined time. I thought, maybe page 42 or something of your brief, you acknowledge the one thing that you haven't accounted for is the receiver's processing time. Not exactly the receiver's... Something like, you can't know that. Not the receiver's processing time, Your Honor. What Dr. Karp was testifying about, and this is one of the three places that the board cited for supporting its finding of inaccuracy, of less accuracy. I'm saying with a delay introduced by the prover, that's the recipient, which would be unknown to the sender. That's exactly right. So it's not processing time. The processing time associated with the cryptographic function, that would be known. Dr. Karp testifies about that at 1739. What this delay is, is maybe there's an interrupt. Maybe there's something that the receiver is doing that causes it to wait some indeterminate amount of time before responding. I was just including in processing time everything that goes on in the receiver from the moment of receiving till the moment of transmitting back to the sender, whatever that is. And so I would say, Your Honor, that first, not all delay is created equal. And Dr. Karp did not testify about any particular type of delay that would be inherent in the Menezes and OCPS systems. Those systems had a cryptographic function that was known. They had a receiver and a transmitter pair that were known to each other. There was no evidence in the record that that type of unknown, unaccountable delay was present or an issue in Menezes or OCPS. What are you asking us to do? If we were to, you've got the APA argument. Does that require a remand for the board to construe the petition as you say they should have done in the first instance? Is that what we would do? Yes, Your Honor. And what about what the second, let's assume we reject the APA argument. What about the other arguments you made with regard to motivation and so forth? Is that a remand or a reversal? It would be a remand, Your Honor. There are still issues that need to be addressed. This is a single argument regarding motivation that combined that the board resolved the entirety of these two petitions on. And so we would ask for a remand in this case. We do believe that there is no reasonable argument that the board made a broad finding that Branson-Chom is limited, strictly limited to the details of its protocols. Dr. Karp testified repeatedly at 1729 and 30, at 1717-18, more pages that we cite in the briefing that Branson-Chom had a greater teaching that a person of skill in the art would understand about the ability to time a challenge response in a cryptographic protocol and use the well-known correspondence between distance and time to impose a distance bound. The patent describes Branson-Chom as having that same type of broad teaching. That's at Appendix 76. Branson-Chom closes by saying, we don't know exactly how best to use this technology. This is at Appendix 3225. You should experiment. You should figure it out. And there is nothing from Mr. Williams, Felix expert that says Branson-Chom was strictly limited that a person of skill in the art would not have taken anything else away from Branson-Chom except for the details of its protocols. And so we do think that there is no reasonable way to find that the board made that implicit finding. This court dealt with a slightly similar issue in the Vicor case that we cited. There, there was similarly a couple arguments that the challenger, the patent challenger said had not been addressed by the board. And this court said, well, the board said that the principal teaching of the reference is something related to, I believe, some type of protocol transmission. And this court said, maybe that was a broad finding against motivation to combine, but we don't know. We don't know that without a full and reasoned explanation from the board. And so this court remanded and they said on remand, if that is in fact the finding the board intends to make, say that, say it expressly and give us a basis and analysis that we can evaluate on appeal for your finding. That is exactly the case we have here, Your Honors. If it is true, and I think that that is the only way that one can harmonize the analysis that the board put forth with the arguments in the petition. Finish that sentence and then we'll move on. Then we would need a remand for a full and complete evaluation of that finding. Thank you, Your Honor. Thank you. We thank both sides in the case this evening.